IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| EUGENE MCAUTHUR MULLINS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:20-cv-00573 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| STEPHEN CLEAR, *et al.*, | ) | By:    Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Eugene McAuthur Mullins, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against Stephen Clear and Howard Carlton (collectively "Defendants"). Mullins claims that the defendants violated his constitutional right to receive adequate medical care while incarcerated. The case is presently before the court on Defendants' motions for summary judgment. For the reasons set forth below, the motions will be granted.

## I.    FACTUAL BACKGROUND

The following facts are either undisputed or presented in the light most favorable to Mullins, the nonmoving party on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Clear is the Superintendent of the Southwest Virginia Regional Jail Authority ("SWVRJA"). (Pl.'s Add'l Evid. at 18[1] [ECF No. 29].) Carlton is a registered nurse and Health

---

[1] The page numbers in the court's citations to the parties' exhibits refer to those assigned by the CM/ECF system.

Services Administrator. (Aff. of Howard Carlton ¶ 2, Dec. 1, 2020 [ECF No. 18-1].) Carlton "work[s] with Mediko Correctional Healthcare as an independent contractor to provide nursing care and administrative services to inmates at [the SWVRJA's] Abingdon facility." (*Id.*)

Mullins has been in the custody of the SWVRJA since January 23, 2020. (*Id.* ¶ 6.) Upon his arrival at the Abingdon facility, a licensed practical nurse performed an intake screening. (Carlton Aff. Ex. at 37–44 [ECF No. 18-2].) During the intake screening, Mullins reported that he had a history of seizures and that he was currently taking gabapentin and other medications. (*Id.* at 37, 41.) Mullins also reported that he had been using methamphetamine and opioids on a daily basis for six or seven months and that he had recently used intravenous drugs. (*Id.* at 41–42.) Based on his reported drug use and the potential for withdrawal, Mullins was admitted to the medical observation unit ("MOU") for monitoring. (*Id.* at 14.) He was released from the MOU on January 27, 2020, after exhibiting no signs or symptoms of withdrawal. (*Id.*)

On February 1, 2020, Mullins submitted a medical request for his prescribed medications. (Pl.'s Resp. in Opp'n at 3 [ECF No. 26].) Mullins provided the name of a pharmacy that might be able to provide the required information. (*Id.*)

On February 2, 2020, a nurse went to Mullins's cell to assess him for chest and shoulder pain. (Carlton Aff. Ex. at 14.) Mullins reported that he had fallen the previous night while having a seizure. (*Id.*) He advised the nurse that he had been prescribed gabapentin for seizures and that he needed the medication. (*Id.*) The nurse moved Mullins to the MOU to "monitor for seizure activity" and placed him on the list to see a doctor. (*Id.*) The next day, Mullins asked

to be released from the MOU. (*Id.* at 56.) He reported that a visitor was coming to see him and that he was feeling better. (*Id.*at 56–57.)

On February 5, 2020, Mullins saw Dr. Joseph Cutchin. (*Id.* at 25.) The examination notes indicate that Mullins requested gabapentin. (*Id.*) Because of its addictive properties and potential for abuse, gabapentin is not dispensed at the Abingdon facility. (Carlton Aff. ¶ 9.) Consequently, "Dr. Cutchin ordered Keppra [levetiracetam], an anti-convulsant with fewer addictive properties."[2] (*Id.*; *see also* Carlton Aff. Ex. at 25.) That same day, a family member delivered six additional prescription medications, each of which was tabulated and ordered for Mullins. (*Id.* at 25–29.) On February 6, 2020, Mullins's prescription for Keppra arrived at the facility, and he received his first dose. (*Id.* at 29.)

On March 16, 2020, Mullins submitted a medical grievance regarding his previous fall. (Pl.'s Resp. in Opp'n at 36.) Mullins asserted that he "had a seizure and fell off the top bunk" because he had gone "without [his] seizure meds . . . for 13 days." (*Id.*) That same day, Mullins submitted a request for medical treatment. (*Id.* at 37.) He reported experiencing pain in his neck, shoulder, and back as a result of the fall. (*Id.*) A medical staff member responded that Mullins was already assigned to a bottom bunk and that he would be placed on the list to see a doctor. (*Id.*) The staff member also explained that outside medications cannot be given to inmates without "medical records" or "current pill bottles." (*Id.* at 36.)

On March 19, 2020, Mullins submitted a medical grievance concerning his initial bunk assignment and the delay in receiving seizure medication. (*Id.* at 40.) In response, a medical

---

[2] Keppra is the brand name for levetiracetam. *See Arellano v. Santos*, No. 3:18-cv-02391, 2020 WL 1275650, at *4 n.2 (S.D. Cal. Mar. 16, 2020) (internal citation omitted).

staff member noted that Mullins had been prescribed Keppra for seizures and that he had been assigned to a bottom bunk. (*Id.*)

On March 26, 2020, Mullins submitted another medical grievance raising similar complaints. (Pl.'s Add'l Evid. at 4.) In response, a medical staff member once again noted that Dr. Cutchin had ordered Keppra for seizures and that Mullins had been designated for placement on a bottom bunk. (*Id.*) The staff member also noted that outside medical records forwarded to the facility made no mention of Mullins being prescribed gabapentin. (*Id.*)

On April 17, 2020, Mullins was examined by Dr. Troy Reece. (Carlton Aff. Ex. at 23.) The examination notes indicate that Mullins complained of shoulder pain from a previous injury. (*Id.*) Based on the physical examination findings, Dr. Reece diagnosed Mullins with left shoulder impingement syndrome and administered an injection of Kenalog with lidocaine. (*Id.*)

On April 27, 2020, Mullins submitted a request to see a doctor for ongoing shoulder and neck pain. (Pl.'s Resp. in Opp'n at 20.) A medical staff member advised Mullins that he would be placed on the list to see a doctor. (*Id.*)

Less than two weeks later, on May 5, 2020, Mullins saw Dr. Charles Hurlburt. (Carlton Aff. Ex. at 22.) During the examination, Mullins complained of worsening shoulder pain and reported that the steroid injection had not provided any relief. (*Id.*) Dr. Hurlburt prescribed Zanaflex and ordered an x-ray of Mullins's left shoulder. (*Id.* at 23.) Carlton entered the orders from Dr. Hurlburt but did personally examine Carlton. (*Id.*; *see also* Carlton Aff. ¶ 5 ("I have never examined [Mullins] or been involved in any of his treatment decisions. My name appears

only once in the medical records, when I input the orders from a physician's visit . . . on May 5, 2020.").

Mullins underwent the shoulder x-ray that same day. (Carlton Aff. Ex. at 49.) The x-ray revealed moderate arthritic changes but did not show evidence of fracture or dislocation. (*Id.*) The interpreting physician diagnosed Mullins with "[o]steoarthritis of the shoulder and A.C. joint space." (*Id.*)

On May 18, 2020, Mullins again requested to see a doctor for shoulder pain. (Pl.'s Resp. in Opp'n at 10.) In response, a medical staff member advised Mullins that Dr. Hurlburt wanted him to try Zanaflex for 30 days. (*Id.*) The staff member noted that Mullins had only been taking the medication for approximately two weeks. (*Id.*)

On May 27, 2020, Mullins saw Dr. Virat Bakhshi for various issues, including shoulder and neck pain. (Carlton Aff. Ex. at 20.) Dr. Bakhshi noted that Mullins had "left shoulder bursitis vs. rotator cuff injury." (*Id.*) He prescribed Mobic and increased the dose of Mullins's muscle relaxant. (*Id.*)

Medical records indicate that Mullins did not appear for a subsequent follow-up visit with Dr. Ada Van-Vloten. (*Id.* at 19.) On August 14, 2020, Dr. Van-Vloten reviewed Mullins's recent sick-call requests and noted that Mullins needed to be more compliant with his existing medications before she would consider alternative treatment options. (*Id.* at 18.) Similarly, on September 9, 2020, Dr. Cutchin declined to make any changes to Mullins's treatment regimen. (*Id.* at 18.) Dr. Cutchin noted that Mullins was "already on correct doses and meds." (*Id.*)

On September 13, 2020, Mullins sent Clear a letter complaining about the medical staff at the Abingdon facility. (*Id.* at 53.) Mullins advised Clear that he had not received adequate medical treatment and that he would be filing a civil action under 42 U.S.C. § 1983. (*Id.*)

## II.   PROCEDURAL HISTORY

On September 23, 2020, Mullins filed this § 1983 action against Clear and Carlton.[3] Mullins claims that the defendants violated his rights under the Eighth and Fourteenth Amendments by providing inadequate medical care. (*See* Attach. to Compl. 1 [ECF No. 1].) In particular, Mullins alleges that Clear "is aware of the neglect going on at [the Abingdon] facility and allows nothing to do be done about it." (*Id.*) Mullins further alleges that Carlton "allowed [him] to be hurt" in February 2020, when he fell during a seizure, and that Carlton "neglected to help [his] medical needs" after the fall. (*Id.*)

Clear and Carlton have moved for summary judgment. The motions have been fully briefed and are ripe for disposition.

## III.   STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d

---

[3] The case caption of the complaint also lists "Defendants 1, 2, 3." (Compl. at 1 [ECF No. 1].) When asked to provide additional information regarding the unidentified defendants, Mullins responded that the defendants are "Stephen Clear" and "Howard Carlton." (Pl.'s Resp. to Order at 1 [ECF No. 20].) Accordingly, Clear and Carlton are the only defendants named in the case.

323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under

the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248–49).

When ruling on a motion for summary judgment, the court must view the evidence in

the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per

curiam). To withstand a summary judgment motion, the nonmoving party must produce

sufficient evidence from which a reasonable jury could return a verdict in his favor. *Anderson*,

477 U.S. at 248. "Conclusory or speculative allegations do not suffice, nor does a mere scintilla

of evidence in support of [the nonmoving party's] case." *Thompson v. Potomac Elec. Power Co.*,

312 F.3d 645, 649 (4th Cir. 2002) (internal quotation marks and citation omitted).

## IV.   ANALYSIS

"Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal

constitutional right by an official acting under color of state law." *Williamson v. Stirling*, 912

F.3d 154, 171 (4th Cir. 2018) (internal quotation marks and citations omitted). In order for an

official to be held liable under § 1983, the plaintiff must affirmatively show that the official

"acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841,

850 (4th Cir. 1985) (internal quotation marks and citation omitted). "That is, the official's 'own

individual actions' must have violated the Constitution." *Williamson*, 912 F.3d 154, 171 (4th

Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Mullins claims that Clear and Carlton violated both the Eighth Amendment's

prohibition of cruel and unusual punishment and the Due Process Clause of the Fourteenth

Amendment. The constitutional right at issue depends on Mullins's status at the time of the

alleged violation. "Under the Eighth Amendment, [convicted] prisoners have the right to

- 7 -

receive adequate medical care while incarcerated." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). An Eighth Amendment violation occurs when a correctional official "demonstrates 'deliberate indifference' to an inmate's serious medical needs." *Id.* (citations omitted). Under the Fourteenth Amendment, "a pretrial detainee has a right to be free from any form of punishment." *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990). Although "[t]he 'precise scope' of this Fourteenth Amendment right remains 'unclear[,]' . . . a pretrial detainee makes out a violation at least where 'he shows deliberate indifference to serious medical needs' under cases interpreting the Eighth Amendment." *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) (quoting *Martin v. Gentile*, 848 F.2d 863, 870 (4th Cir. 1988)). Thus, regardless of whether Mullins was a pretrial detainee or a convicted inmate during the time period at issue,[4] the court will analyze his claims against Clear and Carlton under Eighth Amendment precedent. *See Brown v. Harris*, 40 F.3d 383, 388 (4th Cir. 2002) ("[W]e need not resolve whether Brown was a pretrial detainee or a convicted prisoner because the standard in either case is the same— that is, whether a government official has been 'deliberately indifferent to any [of his] serious medical needs.'") (quoting *Belcher*, 898 F.2d at 34).[5]

---

[4] Mullins's status is unclear from the record, and the parties' briefs do not address this issue.

[5] In *Kingsley v. Hendrickson*, the Supreme Court held that a claim of excessive force under the Fourteenth Amendment is subject to a different standard than a claim of excessive force under the Eighth Amendment. 576 U.S. 389, 397 (2015). "But *Kingsley* did not address the standard for deliberate indifference to serious medical needs," *Strain v. Regalado*, 977 F.3d 984, 990 (10th Cir. 2020), and the United States Court of Appeals for the Fourth Circuit has not decided whether *Kingsley* altered the standard for other types of claims. *See Mays*, 992 F.3d at 300-01 & n.4 (4th Cir. 2021) (acknowledging a circuit split and declining to decide the issue). Accordingly, the court "will continue to apply well-settled Fourth Circuit precedent on this matter." *Sams v. Armor Corr. Health Servs., Inc.*, No. 3:19-cv-00639, 2020 WL 5835310, at *19 n.19 (E.D. Va. Sept. 30, 2020); *see also Doe v. Shenandoah Valley Juvenile Ctr. Comm'n*, 985 F.3d 327, 340 (4th Cir. 2021) (citing the test for deliberate indifference under the Eighth Amendment and noting that the "same standard" has been applied to claims of inadequate medical care raised by pretrial detainees) (citing *Brown*, 240 F.3d at 388).

A claim of deliberate indifference has two components. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017). In this case, the defendants do not dispute that Mullins has serious medical needs. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (explaining that a serious medical need includes "one that has been diagnosed by a physician as mandating treatment") (internal quotation marks and citation omitted). Instead, the defendants argue that the record is devoid of evidence from which a reasonable jury could find that they acted with deliberate indifference to a serious medical need. For the following reasons, the court agrees.

"An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson*, 775 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This is an "exacting standard," which requires more than "mere negligence or even civil recklessness." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). To establish a constitutional violation, "it is not enough that an official *should* have known of a risk" to an inmate's health; rather, the official "must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* "The subjective component therefore sets a particularly high bar to recovery." *Iko*, 535 F.3d 225, 241 (4th Cir. 2008).

Applying these principles, the court concludes that the defendants are entitled to summary judgment. Turning first to the claim against Carlton, there is no evidence that Carlton

was personally involved in assessing Mullins' medical needs upon his arrival at the Abingdon facility on January 23, 2020, or that Carlton played any role in the decision to prescribe Keppra for seizures two weeks later. Likewise, there is no evidence that Carlton was personally involved in evaluating Mullins after the alleged seizure and fall on February 2, 2020, or that he played in any role in the treatment decisions made thereafter. To the contrary, Carlton's affidavit, which has not been rebutted by Mullins and is supported by the medical records, indicates that he had "no direct involvement" with Mullins during the time period at issue and that he has "never examined him or been involved in any of his treatment decisions." (Carlton Aff. ¶ 5.) Based on the evidence presented, no reasonable jury could find that Carlton personally denied or delayed treatment for Mullins's serious medical needs, or that Carlton otherwise knew of or disregarded an excessive risk to Mullins's health or safety. *See Jackson*, 775 F.3d at 178.

In response to the pending motions, Mullins argues that Carlton is "over medical" and therefore should be held liable for the actions of other staff members. (Pl.'s Resp. in Opp'n at 1.) The mere fact that Carlton serves as the Health Services Administrator, however, does not provide a basis for liability under § 1983. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("The doctrine of *respondeat superior* has no application under this section."). Instead, a supervisory official "can only be held liable for the failings of a subordinate under certain narrow circumstances." *Green v. Beck*, 539 F. App'x 78, 80 (4th Cir. 2013). Specifically, to establish supervisory liability under § 1983, a plaintiff must show: (1) that the defendant "had actual or constructive knowledge that [a] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) that

the defendant's "response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'"; and (3) that there was an "affirmative causal link" between the defendant's conduct and plaintiff's "particular constitutional injury." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Mullins has not presented evidence sufficient to create a genuine issue of material fact as to any of these elements. There is no evidence from which a reasonable jury could find that Carlton had actual or constructive knowledge that any subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to Mullins. *Id.* Even assuming that Carlton is "over" the medical department, this "does not relieve [Mullins] of the burden of showing a pervasive risk of harm that [Carlton] knew about, actually or constructively—a burden that [Mullins] has not met." *Id.* Additionally, Mullins has not pointed to any evidence from which a reasonable jury could find that Carlton tacitly authorized the delay or denial of medical care, or acted with deliberate indifference to a pervasive risk of harm. *See Shaw*, 13 F.3d at 799 (explaining that "[a] plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses" but may not do so by simply "pointing to a single incident or isolated incidents") (internal quotation marks and citations omitted). To the extent Mullins disagrees with any of the treatment decisions made by the medical staff, "such disagreements . . . fall short of showing deliberate indifference." *Jackson*, 775 F.3d at 178. Accordingly, the court concludes that Carlton is entitled to summary judgment.

For similar reasons, the court concludes that Clear is entitled to summary judgment. There is no evidence from which a reasonable jury could find that Clear, a non-medical official, was personally involved with any delay or denial of medical treatment, or that Clear interfered with or in any way limited Mullins's ability to seek medical attention. *See, e.g., Johnson v. Clarke*, No. 7:20-cv-00717, 2021 WL 1536585, at *2 (W.D. Va. Apr. 19, 2021) ("To bring a denial of medical treatment claim against a non-medical prison official, an inmate must show that the official was personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or was indifferent to the prison doctor's misconduct.") (citing *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994)). Additionally, the record reflects that at least four different physicians examined Mullins during his period of confinement at the Abingdon facility; that the physicians prescribed multiple medications; and that Mullins underwent an x-ray and received a steroid injection in an effort to diagnose and treat his shoulder pain. As a non-medical official, Clear is entitled to rely on the expertise and professional judgment of trained medical personnel, and he "cannot be liable for the medical staff's diagnostic decisions" or "substitute [his] judgment for a medical professional's prescription." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002). Thus, to the extent Clear was made aware of any medical concerns or complaints, he was "allowed to rely on the medical professionals as to what treatment was required." *Johnson*, 2021 WL 1536585, at *2; *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 543 (3d Cir. 2017) (noting that non-medical officials "cannot be considered deliberately indifferent simply because they failed to respond directly to the medical

complaints of a prisoner who was already being treated by the prison doctor") (internal quotation marks and citation omitted).

Finally, to the extent Mullins argues that Clear is "over . . . the regional jail" and therefore responsible for the actions of other staff members (Pl.'s Resp. in Opp'n at 1), Mullins has not presented evidence sufficient to meet the rigorous standard for supervisory liability. *See Wilkins*, 751 F.3d at 226 (quoting *Shaw*, 13 F.3d at 799). As was true with Carlton, there is no evidence from which a reasonable jury could find that Clear had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of harm; that Clear tacitly authorized the alleged delay or denial of medical care; or that he acted with deliberate indifference to a pervasive risk of harm. *See id.* At most, the evidence indicates that Clear was made aware of Mullins's complaints in September 2020, when Mullins wrote Clear a letter advising of his intention to file a federal lawsuit. Such evidence is insufficient to satisfy the "heavy burden of proof in supervisory liability cases." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984); *see also Cox v. Getachew*, No. 8:19-cv-02731, 2021 WL 765687, at *7 (D. Md. Feb. 26, 2021) (holding that the plaintiff's "allegations that he wrote a single letter to [the warden] and [the warden] failed to use his full power to address that letter" were insufficient to state a claim for deliberate indifference or supervisory liability); *Gilmer v. Smith*, No. 7:14-cv-00111, 2015 WL 898193, at *4 (W.D. Va. Mar. 3, 2015) (noting that a prison administrator's "review of one grievance is not sufficient to establish liability"). Accordingly, the court concludes that Clear is entitled to summary judgment.

## V.    CONCLUSION

For the reasons stated, the court will grant the motions for summary judgment filed by Clear and Carlton.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this _29th_ day of September, 2021.


/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

- 14 -